Good morning. I represent Gerald Silva. My name is Robert Mann. He is the defendant in a seven-count child pornography prosecution. The first six counts allege the illegal receipt of child pornography. Both at trial and on appeal, the defendant challenges whether the government had sufficient evidence to prove that he was involved in child pornography. I think the record is fairly clear and the district court has opined that the government was obligated to prove not only that he received the items that were child pornography or allegedly child pornography, but he knew that they were child pornography. And the defense contends that the government simply cannot prove that when he received these items that they were child pornography. The government says, look, he obtained all these items from a producer, Azoff Films. He knew what Azoff Films was all about. He knew that Azoff Films was involved in illegal activity. He knew that Azoff Films was selling films that were sexually suggestive, that included child pornography. And if you accept the government's definition of child pornography, they were doing that. But they were also selling films that were not child pornography, even according to the government's case agent. And when you look at what he received, there's no way he could know at the time that he received these items whether or not the items were child pornography, even accepting the government's definition of what child pornography is. What was the evidence in terms of the videos? There were five receipt charges. Six, I believe, Your Honor. They covered a four-month period. And didn't he receive some videos prior to those six? He may have received some prior to that, but the videos that were the subject of the six counts covered, I think, a four-month period from November 25th to March 25th, I think. Right. But what did the receipt of the prior DVDs show regarding his understanding or expectation of what it was he was getting by ordering from this site? Well, the whole defense position is that the problem with the government's argument in this case is this. Even if you accept the government's position that some of these DVDs were child pornography, it is equally clear that not even the government contends that all the DVDs that came from Azov were child pornography. Their own agent testified that there were non-child pornography DVDs that came from Azov. Their own agent was asked about how he would classify certain DVDs. Admittedly, his classification isn't binding. It's the court's determination. But he said that he would have to look at the DVDs before he could classify whether or not they were child pornography or not child pornography. He said looking at them for – on one particular DVD that he was questioned about, he said looking at it for a couple of seconds would not be enough. He'd have to do an in-depth review of it. Let me put it this way. Suppose he'd received 10 DVDs prior to the first one that there's a receipt charge on, and all those 10 were clearly not pornographic. You would be making a very strong argument, I would assume, that when he ordered the 11th one, there's no reason to think he thought it would be any different than the 10. My argument would be stronger than it is now. Exactly. If the other 10, though, were clearly pornographic, then your argument would be weaker than the hypothetical I just posed. It would be weaker than the hypothetical, but, A, I don't believe the record supports the hypothetical that you proposed. And that's my question, is what specifically does the record tell us about the ones that he received beforehand? I don't think it tells us anything specific about whether or not – the only DVDs that I think the record shows were pornography accepting the government's definition were the ones that they introduced into evidence, which covered the six or seven counts, depending upon whether you include the possession count. I am not focusing on that specific question. Well, let's deal then with those six. The first one, you concede, accepting the government's definition, did include child pornography. He then ordered further ones? There's no question. The government makes that argument. They sort of say, serial purchase of these items matches Jessica Yada's hypothetical. Even if you didn't know the first one, you'd know the second one. Even if you didn't know the second one, certainly by the time you got the third one or the fourth one – And what's wrong with that argument? I'll tell you what I think is wrong with that. It is also clear that some of the DVDs from Hazell were not child pornography. No. Doesn't each DVD contain images of child pornography, even if 100% of it is not child pornography? No, Your Honor. The record is clear that some DVDs, at least according to the government's own case agent, he testified that he would not classify some of these DVDs as having child pornography. When you say these DVDs, do you mean DVDs Azov has or DVDs that your client received? DVDs that Azov had that were sent to my client. Some of those do not have any child pornography? At least if you accept the agent's testimony. Now, his classification obviously isn't binding, but I would suggest – and he drew a distinction between child pornography and child erotica. But the jury did see each of the DVDs, didn't it? I mean, compressed, but – They saw all the DVDs. And it was left to the jury to determine whether they included pornographic images or not. I agree, but my argument with respect to counts one through six on the knowledge issue is the following. The government would have a much stronger case with respect to those six counts if they had charged possession. My argument is that with respect to those counts one through six, they charged receipt. I think that obligates the government to prove knowledge at the time of receipt. We could quibble about whether it's at the exact moment of receipt or not. The government cites some cases in its brief that talk about where the defendant was asleep, for example, when he received – when the DVDs were delivered. He didn't know that at a precise moment. In all of those cases, the defendant was clearly ordering child pornography. My argument is that when he received these, he didn't know they were – there's no proof that he knew they were child pornography. It's a different question about whether he put – when he possessed them, he knew they had child pornography. And what does the record show – this is, I think, the same question Judge Guida was asking, but maybe put slightly differently. What does the evidence show, the record show, about what DVDs your client possessed at the time he received some of the DVDs you contend he couldn't have knowledge that upon receipt they were child pornography? Do you follow? I do follow your – follow. The record – I'm not sure the record is clear as – the record is clear that he received, I think it was 60 or something in that neighborhood of total DVDs, but I don't think there was a timeline that showed that he received this DVD on that date, which ones were and were not classified. In fact, the vast majority of DVDs did not receive, at least to my knowledge, a classification as either child pornography or not being child pornography neither. They were simply – they seized the number of child pornography. So let's say that the record is ambiguous or it doesn't give a timeline one way or the other. As to the other DVDs. As to the other DVDs. So we wouldn't know what he possessed at the time he received any DVD that you would then identify as not being a DVD that he – But I think – excuse me. But I do think it's clear from the record that he received some DVDs that were not child pornography. I think a fair reading of the record. At some point. At different points, yes, Judge. And he also – because Azov not only produced – So if I just understand your – if your argument is that you can't attribute knowledge of receipt on the basis of this record to him because the record doesn't show he plainly had in his possession DVDs he knew to contain child pornography at the time he received any DVD. That is exactly the argument that we make. And I think it's reinforced by the testimony of the government's case agent when he's asked about how he would classify certain DVDs. And he says, I'd have to look at them. I'd have to look at them in more depth. And I think Mr. Silva – the same could be said of Mr. Silva. It's a different question about whether he charged possession because then he would have had them for some period of time. So that's why I think the government has failed in its proof of receipt. The second argument I'd like to address – Can I ask you just one version? What would be wrong with a jury rationally ascribing to a receiver of child pornography knowledge that they were receiving child pornography from the fact that post hoc they had possessed material that was child pornography? Now, we've been having this conversation on the assumption that they would have had to possess it beforehand to attribute knowledge to him. But why wouldn't it be rational for a jury to say, if he's ordered many DVDs and we know he possessed ones that had child pornography in it, why wouldn't it be rational for a jury to conclude that when he reached out to get them, he was receiving ones that also had child pornography and knew that to be the case or desired that to be the case? And my response would be, it would be if all the DVDs he had were child pornography, but there were a large number of DVDs. I think a fair reading of the record would provide an inference that a large number of the DVDs he had were not child pornography. They were sold by Azov, but they were not even produced by Azov. Right, but with respect to the DVDs that he's charged on the receipt counts. Right. I assume your argument doesn't depend on us concluding that those DVDs had no child pornography. No, it doesn't at all. So I guess the question is, with respect to DVDs that he received that had child pornography on them, why wouldn't the fact that he possessed many DVDs with child pornography be a rational basis for a jury concluding that the ones that had child pornography that he got were ones he wanted to get with child pornography? And I think the best, may I answer the question? Yeah. I think the best response I can give is that even the case agent who was intimately involved with these DVDs refused to speculate upon how he would classify a particular DVD until he had reviewed them. And I think Mr. Silva should be in the same position. How can anybody speculate about what is in that DVD until they've reviewed it on the basis of this record? Why, then, was your client a continual customer of a company that he knew produced child pornography because he, in fact, had purchased their product and found it? I assume I can try to answer. And my answer is, putting aside the dispute about my client's dispute about whether or not it is or is not child pornography, is that he was also purchasing large numbers of DVDs that were not child pornography. And so to determine whether or not a particular DVD met the government's definition could not be ascertained until he actually viewed it, Your Honor. Okay. Thank you. Thank you. Mr. Lockhart. Good morning. Donald Lockhart for the government. Picking up on Judge Barron's last point, when the defendant is constantly ordering these DVDs, it tells you something not just about what his mindset is as to that particular order. It also retrospectively tells you something about his intent even prior to his ordering of the first DVD charged in the first receipt count, because if he had made a mistake, if he got something that he didn't expect and didn't want in the case of count one of that receipt count, the question arises, well, why did he continue to order the same basic genre of DVD? So the sequential nature of his orders matters to his intent running sort of in both directions, both telling you something about his intent even prior to the first order and telling you about his intent as he was ordering, say, the third or fourth or fifth of those DVDs. But we make two other points about... Can I stop you on the first point just so I... Yeah. If you have a customer who wants all that Azoff is selling, both the stuff that has child pornography in it and the stuff that doesn't, and he continuously orders from them, how do you attribute to the customer a desire to acknowledge that he was receiving child pornography every time he gets something from Azoff? Well, part of the reason why is you need to look at the two other categories of circumstantial evidence that we presented on this issue. One, it's not just the sequential nature of the orders. It's the e-mails that he sent to his police officer colleague and also the descriptions of these films that were on the website. I'll start with the descriptions first because the record is clear that he's ordering all of these films from the website. The record's very clear that he's intimately familiar with the website. So the jury can easily infer that he's read the company's own descriptions of these DVDs, and you can see right in those descriptions the basic sort of category of DVD that he is ordering. So even if some of the Azoff DVDs are non-pornographic, the descriptions on the website help you narrow the field. But do they narrow it? The first one he got was FKK Waterlogged. So the description for that, do you maintain that when you read the description from that, it establishes as between the two examples Judge Barron just gave that this particular one was in the pornographic category as opposed to the almost pornographic category? If you combine that with the two other categories of circumstantial evidence, then it's enough for a rational trier of fact. But I don't see how your after the fact helps you. If he wants both comedies and tragedies from the same company and he's ordering both, how do you know when he receives his fifth one that he was anticipating that that would be a tragedy as opposed to one of the three comedies that he got out of the six and so on? Because the descriptions on the website of these films leave very little to the imagination. That comes back to my question, though, that you tried to answer by referring to other evidence. Can you tell from the description itself that it is in the child pornography category? Let me address the description. You mentioned Count One, FKK, Waterlogged. This is the description, part of the description from the website. The camera awakens the boys in the morning, and they have a cold shower together, after which there is a nudist menu of activities, including deep massage scenes. So that description tells you a fair amount about what you're going to be getting. You're going to be getting nude boys who are engaged in having a shower and then deep massage. Certainly a rational jury could say that this distinguishes this Azov category of film from some Shakespearean title that he might have ordered in addition. So the descriptions, and there are descriptions for each and every one of the films charged in the receipt counts, give the rational jury that sort of clue right from the get-go. Count Two, for example, the DVD charged in Count Two, Vladek's naturist buddies join him in sauna and beach antics as part of a lengthy series of Vladek nudist scenes from seven of his movies that will leave you wanting more. Now, the appeal to the prurient is fairly obvious there, nudist movies about boys that will leave you wanting more. Count Four, the DVD will focus on our on-camera nudists who have obviously become very comfortable with a camera and who are under no adult supervision, including a scene in a hotel room where Paul and Kalen get into some nudist fun while Alex looks on, as well as nude wrestling and deleted scenes of Paul and Kalen in a private cabin on a train. So that helps you kind of narrow the field right from the get-go. You combine that with the sequential nature of the DVD orders, and you combine it further with a category of evidence that we haven't even discussed yet, which is the emails that he sent to his police officer colleague, which show that he had concluded, based on his review of the website, that they were up to no good, they were engaged in illegal activity. And indeed, he said, as part of these emails, that the site focuses on nude boys, the site contains a BoyJoy link that goes to XXX adult male sex films. He fears that Azoff is doing more with these boys than they are presenting. He has a really bad feeling about what may be happening to these boys. He thinks the boys are being groomed to perform in the pornographic adult films when they come of age. And then after the website goes down, he says, I just hope that the Russians are not scurrying back to their home turf to reestablish themselves. I hope the authorities are all over them. Now, our contention is that he could have formed those dim views of Azoff's activities upon his initial studying of this website, and even before he ordered that first DVD, a rational jury could have found that actually he was understating his conclusions to his police officer colleague. And when you combine that with the sequential nature of the DVD orders and the description of the films, it adds up to more than sufficient evidence for a rational jury to find that he knew what he was ordering was child pornography. And did the jury, if I'm correct, the jury saw the nine or so DVDs that he ordered before the first November 29 receipt charge? I'm glad you asked that question. I meant to clarify that because it's important to note that although there is material in evidence and in the appendix which shows, I think, the dates of the, I think, 75 items that he ordered, 22 separate orders, 75 separate items, something like that. Although you can see the chronology, I don't think that we have specifics in the record concerning the content of any earlier films. I'm not even sure as we speak whether there is an earlier film which predates the first receipt count. What I do feel comfortable saying is that the indictment is based on nine DVDs and two, I think, still photo DVDs, and the jury sees those obviously. There may be some very general descriptions about some of the other DVDs Azoff offers and that he purchased, but we didn't put in any of those other DVDs into evidence and the jury wouldn't have known the precise content. So the first DVD in chronology that the jury saw was the first, is the first receipt charge? That's from my memory. I think that's right and so that's why our argument is not seeking to attribute any significance to any earlier DVDs. What was the prosecution's theory as to why the defendant called himself to the attention of the state police about this website? Well, what happened, if you look at the offense facts, is that the Azoff website was taken down and you can see there's evidence that we put on that the defendant tried to visit the website and saw it had been taken down, got some form of an error message, and developed some concerns about whether the authorities had shut down Azoff as they had, the Canadian authorities had by that time shut them down and shut down the website. And at that point he begins covering his tracks is our theory and the way he does that is he has a police officer friend and he sends these emails to him essentially saying that he's a concerned citizen, he's found this website and later on says that well actually he did buy some DVDs, but it was part of an academic study that he was doing. Thank you. Thank you.